LORETTA ELIZABETH O'LOUGHLIN, PLAINTIFF-RESPONDENT, v. THOMAS A. O'LOUGHLIN, DEFENDANT-APPELLANT.

Argued November 13, 1950—Decided January 8, 1951.

*Mr. Thomas J. Brogan* argued the cause for appellant. *Mr. Harry Cohn,* attorney.

*Mr. Saul J. Zucker* argued the cause for respondent. *Messrs. Kristeller & Zucker,* attorneys.

The opinion of the court was delivered by

HEHER, J. The questions here involve a seeming conflict of jurisdiction in proceedings relating to alimony after a foreign decree of divorce.

The case history will contribute to an understanding of the issues raised and the ultimate problem for decision.

On April 25, 1935, a final judgment and decree was entered in the Second Judicial District Court of the State of Nevada dissolving the marriage between the parties to these proceedings and directing the payment of alimony at the rate of $225 per month in accordance with a property settlement made between them and thereby confirmed and adopted as the judgment of the court. The action was brought by Thomas. Loretta appeared and participated in the proceedings, in her own proper person and by attorney, but interposed no defense at the hearing. The judgment expressly reserved jurisdiction over "all questions of alimony," including the power to modify the allowance in accordance with changed circumstances. It is contended that thereafter the alimony was by common consent reduced to $125 per month, commencing October 10, 1935. At all events, alimony was thereafter paid at the reduced rate and accepted by Loretta without protest. On August 15, 1949, at the instance of Loretta, the Nevada court entered judgment by default against Thomas establishing alimony arrearages of $16,700. The judgment recites personal service of process upon Thomas at his place of business in Newark, New Jersey, and his default; but the service is denied by Thomas.

On December 22, 1949, Loretta filed the verified complaint
herein praying in one count for an adjudication of the _quantum_
of alimony in arrears under the final judgment and
decree of divorce of the Nevada court, the specific relief given
by the cited Nevada default judgment of August 15, 1949,
and in a second count for the enforcement of the latter judg-
ment of the Nevada court. Again, there was a default, this
time due to a misunderstanding of counsel as to the time set
for making answer, so it is said; and on January 25, 1950,
there was judgment by default fixing the alimony arrearages
at $16,700 and directing the payment of a counsel fee of
$1,000 and taxed costs. It is contended that this judgment
is _coram non judice_ for want of due service of process. Thomas
was served with an order directing him to show cause on
February 10, 1950, why final judgment should not be ren-
dered in accordance with the prayer of the complaint and
why he should not provide maintenance _pendente lite_ and a
counsel fee and suit money. There was provision for service
of the order and complaint on or before February 1st, in
accordance with _Rules_ 3 :4 and 3 :79, and for making answer
to the complaint within twenty days after service. Execution
was issued upon the judgment.

Thereupon, on January 31st, Thomas applied to the Ne-
vada court for the vacation of the default judgment entered
against him in that tribunal on August 15, 1949; and on
the following day, at his instance, a rule was entered in the
present action directing Loretta to show cause on February
10th following why the default judgment of January 25th
should not be vacated and leave to answer given. The hear-
ing on the order to show cause was continued to February
24th, upon condition that Thomas give bond in the sum of
$20,000 for the payment of "any judgment" entered in the
cause against him. Thomas was also directed to provide the
traveling expenses of Loretta and her witnesses incident to
their appearance in the Nevada court on the hearing of his
application for the vacation of the judgment of August 15,
1949, if he concluded to introduce evidence in that proceeding,

his own or that of others. On February 16th, the Nevada court restrained the enforcement of its judgment of August 15, 1949, pending disposition of the motion to quash the purported service of process and also the question of whether the default judgment should be vacated and leave granted to answer on the merits. On February 24th, after hearing on the order to show cause made on the prior February 1st, the Superior Court denied Thomas' motion to vacate the judgment of January 25th, but stayed further proceedings to enforce the judgment until the determination by the Nevada court of the question of the sufficiency of the service of process and the validity of the default judgment entered in that cause, the stay not to extend beyond April 1, 1950. Thomas was given leave to answer the first count of the complaint. On March 18th, after hearing, the Nevada court quashed the service of process in that proceeding, vacated the judgment of August 15, 1949, allowed Thomas to answer on the merits, continued in full force and effect the restraining order of February 16, 1950, and enjoined Loretta from taking any action for the enforcement of the judgment in any jurisdiction other than the State of Nevada.

By order dated March 31st, entered April 10th, the New Jersey Superior Court again denied Thomas' motion to vacate the judgment entered herein on January 25, 1950, and to strike the complaint, and also denied Loretta's motion to strike Thomas' answer to the first count of the complaint upon condition that Thomas shall "present himself and his New York attorney, Edward Rager, * * * for the taking of their depositions" before a designated officer in New Jersey. The stay of execution of the judgment theretofore granted was modified to allow the enforcement of the provision for a counsel fee and costs. Nonobservance of the condition thus imposed would justify a motion for the lifting of the stay of execution and for such other relief as *Rule* 3:37-4 would permit. The order declared that the validity of the service of the order to show cause made July 1, 1949, in the Nevada proceedings was among the issues open for determination by

the Superior Court; and leave was granted to Loretta to amend her complaint herein to include two counts: one to invoke the Court's jurisdiction to provide support and maintenance for Loretta commensurate with her present needs and Thomas' ability to pay, particularly taking into account (a) "the depressed dollar value since 1935," (b) Loretta's increased needs, (c) Thomas' "enhanced financial position," and (d) the "change in the Federal income tax laws since 1935 making alimony paid pursuant to judgment taxable to plaintiff and deductible by defendant;" and the second for the recovery of the alleged arrears of alimony under the Nevada decree. The complaint was amended accordingly.

This order is the subject of the appeal to the Appellate Division of the Superior Court in A-38, taken April 21, 1950, and certified here, before hearing, on our own motion.

On April 12, 1950, the Nevada action was discontinued on an *ex parte* motion made on behalf of Loretta; but on April 19th the discontinuance was vacated at the instance of Thomas, after hearing on notice to Loretta. The action was then set down for a hearing on the merits.

On April 21, 1950, and after the filing of the notice of appeal herein, the Nevada court restrained Loretta "from taking any further legal action" for the collection of the alimony arrearages alleged to be due under the decree of April 25, 1935, or to enforce the agreement incorporated therein, in any jurisdiction other than the State of Nevada, pending the final judgment of the Nevada court upon the order to show cause made July 1, 1949. On the same day, the Nevada court denied Loretta's motion to vacate the order of March 18, 1950, setting aside the default judgment of August 15, 1949, and permitting Thomas to appear in the action.

Upon the entry of the order under review, Thomas applied, first to the trial division of the Superior Court and then to a judge of the Appellate Division, for a stay of the proceedings in the trial division pending this appeal. Both motions were denied. It is said that the restraining order made by

the Nevada court on April 21, 1950, after the filing of the notice of appeal herein, was offered in justification of the application to the Appellate Division for a stay of all proceedings in New Jersey.

The amendment to the complaint was served on the day of the filing of the notice of appeal.

In 1937, Loretta brought an action in the Supreme Court of New York for the recovery of the alleged arrearages of alimony due under the Nevada decree. Later in that year, she filed an amended complaint alleging the utter invalidity of the Nevada decree and pleading a cause of action for divorce for adultery based on Thomas' marriage and cohabitation following the Nevada decree. Her motion in that proceeding for an examination of Thomas before trial was denied for want of good faith; and in April, 1950, she abandoned the action.

The subject of the appeal in A-39, also certified here on our own motion, is the order of the Superior Court made July 12, 1950, enjoining Thomas, pending final judgment herein, "from litigating, instituting or proceeding with any litigation relating to the alimony differences between the parties in any jurisdiction other than in this court," and denying Thomas' motion (a) to dismiss "all the proceedings" herein; (b) to stay all proceedings in this cause; and (c) to "dissolve or modify" an *ex parte* order made in the cause on May 24, 1950, temporarily restraining Thomas from proceeding with a suit instituted by him in the New York Supreme Court to command observance of the restraining orders of the Nevada court, and also from proceeding with the action pending in the Nevada court.

On the oral argument of the appeals, respondent consented to the vacation of the default judgment entered herein on January 25, 1950, for the enforcement as a debt of record of the judgment entered in the Nevada court on August 15, 1949, adjudging the arrearages of alimony under the prior judgment and decree of divorce to be $16,700. It was also agreed that the allowance of counsel fees and costs be set

aside and the bond cancelled. And other incidental points were abandoned.

The issues remaining for determination are the *quantum* of alimony payable *in futuro* in keeping with what is said to be altered circumstances, and the extent of the arrearages under the Nevada judgment and decree of divorce and the agreement of the parties embodied therein, constituting the subject matter, respectively, of counts three and four of the amended complaint herein. The essential question for decision is whether the Superior Court should defer to the Nevada court on the issue of the arrearages of alimony under the Nevada judgment. If the inquiry be resolved in the negative, the injunction is sustainable only insofar as it enjoins Thomas from proceeding in the Nevada court for the determination of that issue. A restraint should not have been laid upon Thomas against action in the Nevada court for the vacation of the default judgment of that tribunal establishing the arrears of alimony under the prior decree of divorce, for the default judgment entered by the Superior Court in this cause was based upon the Nevada judgment pleaded in the second count of the complaint. While a judgment void for want of jurisdiction is subject to collateral attack, it was nevertheless open to Thomas to challenge the judgment in the jurisdiction of its origin and expunge it as a possible ground for action there or elsewhere. But the concession made at the oral argument removes this question from the case.

There can be no doubt of the power of a court of equity to impose restraints upon persons within the control of its process against action beyond the state. Ordinarily, a citizen of a state may go abroad for such remedies and relief as may be available in the jurisdiction of his choice; but a court of equity has the undoubted power to enjoin those subject to its jurisdiction from seeking relief in a foreign proceeding which would not be compatible with equity and right conscience. The restraint is directed against the litigants, not the foreign jurisdiction. It constitutes an exercise

of equity's jurisdiction *in personam* operative upon those within the reach of the court's process. The remedy of injunction acts *in personam*. But though the power is unquestionable, its exercise is often one of great delicacy; it is a remedy that is sparingly used, to serve the ends of justice in the particular case. Considerations of comity forbid interference with the prosecution of a proceeding in a foreign jurisdiction capable of affording adequate relief and doing complete justice, unless there be a special equity sufficient in conscience to stay the hand of the defendant. The question is not the existence of the power but the propriety of its exercise in the given case. The rule of comity is grounded in the policy of avoiding conflicts of jurisdiction, unless upon strong grounds, and the general principle that the court which first acquires jurisdiction of the issue has precedence. *Home Insurance Co. v. Howell,* 24 *N. J. Eq.* 238 *(Ch.* 1873); *New Jersey Zinc Co. v. Franklin Iron Co.,* 29 *N. J. Eq.* 422 *(Ch.* 1878); *Margarum v. Moon,* 63 *N. J. Eq.* 586 *(Ch.* 1902); *Von Bernuth v. Von Bernuth,* 76 *N. J. Eq.* 177 *(Ch.* 1909); *Bigelow v. Old Dominion Copper Mining and Smelting Co.,* 74 *N. J. Eq.* 457 *(Ch.* 1908); *Lehigh Valley R. R. Co. v. Andrus,* 91 *N. J. Eq.* 225 *(Ch.* 1920); *Caruso v. Caruso,* 103 *N. J. Eq.* 487 *(Ch.* 1928)'; *Prudential Insurance Co. v. Merritt-Chapman & Scott Corp.,* 112 *N. J. Eq.* 179 *(Ch.* 1933). The injunction in such case does not constitute an invasion of the territory of the foreign sovereign, "since the defendant, being within the state, may remain there and abide by the terms of the decree. He is not compelled to act elsewhere in violation of the rights of any other state. The defendant, in other words, may legally be enjoined from acting anywhere." *Beale's Conflict of Laws,* § 96.1. See, also, *Philadelphia Co. v. Stimson,* 223 *U. S.* 605, 32 *S. Ct.* 340, 56 *L. Ed.* 570 (1912).

 Great hardship, inconvenience, or expense has been deemed a sufficient ground for enjoining the prosecution of an action abroad. *Huettinger v. Huettinger* (*N. J. Ch.*), 43 *A.* 574 (1899); *Kempson v. Kempson,* 58 *N. J. Eq.* 94 *(Ch.*

1899) ; same case, 61 *N. J. Eq.* 303 (*Ch.* 1901). In *Von Bernulh v. Von Bernuth,* cited *supra,* it was held that the injunctive power is fairly exercisable to avert "substantial detriment of the resident, not only where the claim is equitable, but also where it is legal." This category includes the restraint of foreign actions on the ground of "oppression and vexation." The prevention of vexatious and oppressive litigation is a familiar exercise of equitable jurisdiction. Injunctions to restrain a multiplicity of suits in such cases are favored. *Pomeroy's Equity Jurisprudence* (*5th ed.*), § 261j.

The circumstances here call for such injunctive relief. Thomas is domiciled and resident in New Jersey; Loretta is domiciled and resident in New York. The jurisdiction of the Nevada court was invoked by Loretta only to have judgment for the amount of the arrears of alimony, for enforcement wherever jurisdiction could be acquired over Thomas and execution of the judgment had. This has been common practice. *Barber v. Barber,* 323 *U. S.* 77, 65 *S. Ct.* 137, 89 *L. Ed.* 82 (1944), 157 *A. L. R.* 163. It was Thomas who brought the Nevada suit. It was he who first resorted to that jurisdiction. Under *R. S.* 2:50–37, the New Jersey courts may make an award of alimony to the wife after decree of divorce, even though the decree was obtained elsewhere. *Vide Conwell v. Conwell,* 3 *N. J.* 266 (1949). The jurisdiction invoked by the third count of the complaint is the continued superintendency of alimony afforded in such cases by *R. S.* 2:50–37. No relief in this behalf may be had under the issues framed in the Nevada litigation, even though the Nevada court is invested with such jurisdiction. The whole controversy is cognizable by the Superior Court here; only the *quantum* of the arrears of alimony is involved in the Nevada proceedings. There is no reason why Loretta should be compelled to reframe and broaden the issues in the Nevada suit and litigate there the question of future alimony as well as the extent of the arrears. As we have seen, Thomas is in New Jersey and subject to its judicial process, while Loretta resides nearby. The interests of neither would be served by

the litigation of these issues in Nevada. That course would lay great hardship and inconvenience upon Loretta without serving in any wise the interests of Thomas. It would be vexatious and harassing. No one at the common law has a right to have his controversy adjudicated in any particular court. *Beale's Conflict of Laws,* § 95.1. The doctrine of comity does not call for a division of the subject matter of the litigation between the two jurisdictions in circumstances such as these. That would also contravene the principle that relief may be had in equity against a multiplicity of suits. The controversy as to the validity of the Nevada judgment for the alleged arrearages of alimony is now moot. Comity is a rule of convenience and expediency; it does not serve to sustain a division of jurisdiction here, for that course would not comport with the reason and spirit of the rule. Securing New Jersey's jurisdiction over the whole of the issue of alimony, by a judgment acting upon the conscience and person of the defendant, is not an intrusion upon the jurisdiction of Nevada.

The orders under review are accordingly modified and, as so modified, affirmed; and the cause is remanded for further proceedings in conformity with this opinion.

*For modification*—Justices CASE, HEHER, OLIPHANT, WACHENFELD, BURLING and ACKERSON—6.

*Opposed*—None.