24 N.J. Super. 354 (1953)
94 A.2d 527
SUELLA STULTZ, PLAINTIFF,
v.
LOUIS STULTZ, DEFENDANT.
Superior Court of New Jersey, Chancery Division.
Decided January 23, 1953.
*357 Messrs. Parsons, Labrecque, Canzona & Combs, attorneys for plaintiff.
Messrs. Karkus & Kantor, attorneys for defendant.
McLEAN, J.S.C.
The complaint in this action seeks: (1) to enjoin the defendant from proceeding with an action to obtain a divorce in the state of Florida, and (2) a judgment for separate maintenance.
The parties were married in Hazlet, New Jersey, in 1906. They have resided in the Borough of Keyport from that date. Four children were born of the marriage, all now of full age. Since August 1931 the parties have lived separate and apart from each other. The defendant has conducted his various businesses and has engaged in other financial enterprises, all within the confines of Keyport. In December of 1951 he went to Florida to visit his brother and sister-in-law by reason of their ill health and his desire to assist them. He testified that subsequent to his arrival in Florida in January 1952 he decided to make Florida his permanent home. In May of 1952 he filed a divorce proceeding in the Florida courts on the ground of extreme cruelty. He then returned to New Jersey and while here he was personally served with the complaint and restraining order in this action. On the return of the orders a permanent order was entered restraining him from proceeding further in the Florida courts.
Defendant now moves for the dismissal of the complaint on the grounds: (1) that he is domiciled in the *358 State of Florida and his action for divorce is properly cognizable in the courts of that state; and (2) that he has always provided for his wife and has made ample provision for her maintenance.
The problem of migratory divorces has been fully discussed in recent decisions of the Supreme Court in Shepherd v. Ward, 5 N.J. 92 (1950); O'Loughlin v. O'Loughlin, 6 N.J. 170 (1951) and Staedler v. Staedler, 6 N.J. 380, 392 (1951). In the Staedler case, Justice Oliphant, with the support of Justice Case in Shepherd v. Ward, shows the dilemma resulting from the conflict of laws and the "inequity and the iniquity" to be relieved in such cases. In the instant case relief can be granted by the application of familiar principles of equity without regard for defendant's claim of a Florida domicile or jurisdiction of the Florida courts, and the contention that the complaint should be dismissed is without merit.
There can be no doubt of the power of the court of equity to impose restraints upon persons within the control of its process against actions beyond the State which would not be compatible with equity and good conscience. Great hardship, inconvenience or expense have been deemed a sufficient ground for enjoining the prosecution of an action abroad. The prevention of vexatious and oppressive litigation is a familiar exercise of equitable jurisdiction. Injunctions to restrain a multiplicity of suits in such cases are favored. Equity acts in personam, and securing New Jersey's jurisdiction over the whole of the issues here involved by a judgment acting upon the conscience and person of the defendant would not be an intrusion upon the jurisdiction of the foreign state. O'Loughlin v. O'Loughlin, supra, and cases cited.
The spouse who is domiciled in the State and who fears irremedial mischief to the marriage relation is as much entitled to judicial protection as the owner of ordinary property situate within the State, and the court may acquire *359 such jurisdiction of the person of the defendant as to empower it to control his actions with respect to his marriage relations by its writ of injunction. Kempson v. Kempson, 61 N.J. Eq. 303, 310 (Ch. 1901), affirmed 63 N.J. Eq. 783 (E. & A. 1902).
The circumstances here call for such injunctive relief. This controversy has already led to a multiplicity of suits and if perchance the cause should follow the usual pattern further litigation may be anticipated by an attack on any judgment entered in the Florida courts. Such multiplicity of suits equity seeks to avoid. Litigation in the Florida courts would lay great hardship, inconvenience and expense on the plaintiff. It would be vexatious and harrowing. These are familiar grounds for the exercise of equitable jurisdiction.
The whole controversy is cognizable here. The defendant is in court by virtue of personal service of process upon him in this State and he is participating in these proceedings. If he has an action for divorce for extreme cruelty it arose in this State, and the plaintiff is domiciled and resident here. It is well established that although the domicile of a wife follows that of her husband, she may establish her own domicile with her husband's consent, manifested by acquiescence or abandonment or by his dereliction, as has happened in this case. Rinaldi v. Rinaldi, 94 N.J. Eq. 14 (Ch. 1923); Floyd v. Floyd, 95 N.J. Eq. 661 (E. & A. 1924). Hence, defendant may bring his action for divorce here; in fact, by a counterclaim he may have it determined in this cause, and still enjoy the privileges of a Florida domicile. N.J.S. 2A:34-10, subd. 1.
It is argued for the defendant that plaintiff has filed an appearance in the Florida proceedings. This is of no consequence. An appearance induced by fraud has no efficacy. Furthermore, since Staedler v. Staedler, a true adversary proceeding to determine defendant's domicile is essential. Such a proceeding can be had in this court and the Florida proceedings abandoned. To hold otherwise *360 would do violence to the rule which seeks to avoid a multiplicity of suits.
The complaint seeks separate maintenance for the plaintiff. The defense is that the parties have been separated since August 1931, and that defendant has adequately provided for his wife and has made provision for her future maintenance. The method provided is not in accord with the usual procedure in such matters. It appears that the plaintiff occupies a residence, the title to which the defendant conveyed to her for the term of her life; that he has transferred his business to his sons, one of the considerations being that they shall provide his wife, their mother, with $35 per week and all necessary medical expenses. This unique method of providing support and maintenance cannot be looked upon with favor. The obligation to support his wife is the direct and continuing obligation of the husband, and under the circumstances here the amount to be paid should be determined and its payment should be adequately secured. It is suggested that a further hearing be had on this point to cover the needs of the wife, the ability of the defendant to provide for her and the security.
Defendant's motion to dismiss the complaint will be denied.