THE TRUSTEES OF PRINCETON UNIVERSITY, AN EDU-
CATIONAL CORPORATION, PLAINTIFF-RESPONDENT,
v. THE TRUST COMPANY OF NEW JERSEY, A COR-
PORATION OF NEW JERSEY, FORREST S. SMITH, AND
VIRGINIA F. CANE, INDIVIDUALLY AND AS EXECU-
TORS OF THE ESTATE OF WILLIAM H. CANE, DE-
CEASED, DEFENDANTS-APPELLANTS, CAROLINE C.
GIBBS, FRANCES DUFFY, LAURA C. ROSS AND GER-
TRUDE MANN, DEFENDANTS.

Argued October 15, 1956—Decided November 19, 1956.

*Mr. Isadore Glauberman* argued the cause for defendant-appellant Virginia F. Cane, as one of the executors of the estate of William H. Cane, deceased (*Mr. Warren Brody,* on the brief).

*Mr. Charles M. James* argued the cause for defendants-appellants Forrest S. Smith, individually and as executor of the estate of William H. Cane, deceased, and The Trust Company of New Jersey, a corporation of New Jersey, individually and as executor of the estate of William H. Cane, deceased (*Messrs. Smith, James & Mathias,* and *Messrs. Lynch, Lora & Milstein,* attorneys; *Mr. Thomas E. Lynch,* of counsel).

*Mr. Thomas J. Brogan* argued the cause for the plaintiff-respondent.

The opinion of the court was delivered by

JACOBS, J.  The Chancery Division issued an interlocutory injunction which restrained the defendants-appellants, The Trust Company of New Jersey, Forrest S. Smith and Virginia F. Cane, individually and as executors of the estate of William H. Cane, deceased, from participating in any further proceedings relating to the probate of Mr. Cane's will, in any jurisdiction except New Jersey.  The appellants duly took their appeal to the Appellate Division under *R. R.* 2:2–3(*a*)(1) as it read prior to its recent amendment.  We certified on our own motion.

The decedent William H. Cane died in Florida on March 27, 1956.  He was then 81 years of age.  On September 21, 1955 he had executed his last will and testament naming his wife Virginia F. Cane (whom he had married in 1952), Forrest S. Smith and The Trust Company of New Jersey as executors and trustees.  The will provides for the establishment of two trusts, each in the sum of $375,000, with income payable to the decedent's widow for life; the widow is given a testamentary power to dispose of the principal of one of the trusts and in default of its exercise the principal is to be paid to The Trustees of Princeton University.  The principal of the other trust is to be paid to The Trustees of Princeton University upon the death of the widow.  The decedent's will also leaves to the widow the sum of $25,000, the contents of their apartment at 2600 Hudson Boulevard,

Jersey City, New Jersey, and the decedent's house, contents and land (approximately 243 acres) in Goshen, New York. Apart from several individual bequests the residue of the estate, which is estimated to be in excess of $5,000,000, is left to The Trustees of Princeton University. The forty-second paragraph of the will contains the following declaration as to the decedent's domicile:

"I hereby declare that my home, legal residence and domicil are at the date of this writing and always have been in the State of New Jersey, that any absences from this State in the past or future have been and will be merely temporary, with the definite intention on my part to return to this State. I further declare that if I should in the future make up my mind to change my home, legal residence or domicil to some place other than this State, I will execute a new Will or add a codicil to this Will changing this paragraph, and the absence of any new Will or codicil will show that my home, legal residence and domicil have continued to be in New Jersey."

On April 18, 1956 The Trust Company of New Jersey, a corporation of New Jersey having its principal office at Jersey City, and Forrest S. Smith, a resident of Monmouth County having his law office at Jersey City, filed a verified complaint in the Chancery Division of the Superior Court of New Jersey demanding judgment admitting to probate the last will and testament of William H. Cane and directing that letters testamentary be granted to The Trust Company of New Jersey, Forrest S. Smith and Virginia F. Cane. The complaint alleged that the decedent died on March 27, 1956 leaving his last will dated September 21, 1955; that at the time of his death he maintained a residence at 2600 Hudson Boulevard, Jersey City; that no caveat had been filed and there was no proceeding pending for the probate of the will in any other jurisdiction; and that the decedent had died owning real estate and personal property or evidence thereof in Hudson County, New Jersey. At the time the complaint for probate was filed Virginia F. Cane filed an affidavit which asserted that the decedent was domiciled at Goshen, New York, and also maintained an apartment in Jersey City; that she had been informed that the court

had power to grant the judgment prayed for in the complaint even though the decedent was domiciled in New York; and that she joined in the prayer for judgment with the explicit understanding that she did not waive any rights that she or the estate might have by reason of the fact that the decedent was domiciled in New York. On April 18, 1956 Judge Stanton entered judgment which set forth that the court was of the opinion that it had jurisdiction to grant the judgment prayed for in the complaint either under *N. J. S.* 3A:3–18 or *N. J. S.* 3A:3–29, admitted the will to probate, and adjudged that letters testamentary be issued to The Trust Company of New Jersey, Forrest S. Smith and Virginia F. Cane upon their qualifying as executors. Thereafter the executors duly qualified as such.

On May 4, 1956 the widow Virginia F. Cane filed a petition for probate in the Surrogate's Court, Orange County, New York. The petition alleged that she was one of the executors named in the will of the decedent; that no petition for probate had been filed except the one which was filed on April 18, 1956 in the Chancery Division of the Superior Court of New Jersey; that the decedent left real property in New York and personal property "wherever located"; that the decedent left real and personal property in Hudson County, New Jersey, and maintained a residence at 2600 Hudson Boulevard, Jersey City, New Jersey; that the decedent was a resident of Goshen, New York, and that an affidavit had been filed by Virginia F. Cane in the New Jersey proceeding stating that he was domiciled in New York. On May 4, 1956 the Surrogate of Orange County, New York, issued a probate citation directing The Trust Company of New Jersey, Forrest S. Smith and others to show cause on June 25, 1956 why the will should not be admitted to probate. Although The Trustees of Princeton University, a New Jersey corporation, was not named in the citation, it and other legatees were served with notices of probate in accordance with New York practice.

On May 14, 1956 the plaintiff The Trustees of Princeton University filed a declaratory judgment action in the Chancery

Division of the Superior Court of New Jersey seeking a determination that William H. Cane had died domiciled in New Jersey and a preliminary injunction against any further proceedings relating to the probate of the decedent's will in any other jurisdiction. The action also sought to have the plaintiff admitted as intervenor in the New Jersey probate proceeding and to reopen and modify the judgment of April 18, 1956. On May 14, 1956 Judge Stanton issued an order to show cause with *ad interim* restraint against participation by the executors in any further proceedings relating to the will "in any jurisdiction, whatsoever, except New Jersey." Thereafter, the order to show cause was served on the three executors; service on Virginia F. Cane was made upon her attorney of record in the New Jersey probate proceeding and on the Clerk of the Superior Court under a power of attorney filed by her in accordance with *N. J. S. 3A*:12–14. The power of attorney was executed by the three executors and set forth that they thereby appointed the Clerk as their attorney "upon whom may be served all process affecting the estate of William H. Cane, deceased, or any interest therein whereof we are the executors" and that such service shall have the same effect as if duly served upon them in the State of New Jersey.

On May 16, 1956 the executors moved to vacate the *ad interim* restraint and on May 18, 1956 their motion was denied. On May 25, 1956 the court heard argument on Princeton's application for interlocutory injunction and for permission to intervene. In support of its order to show cause Princeton relied on the declaration of domicile in the will itself and on an affidavit by counsel which set forth that he had investigated the circumstances surrounding the residence and domicile of William H. Cane; that he had examined copies of United States Income Tax forms and New York State Nonresident Income Tax forms which had been maintained as part of the records of Mr. Cane at 26 Journal Square, Jersey City; that he had examined a 1954 New York State Income Tax Return on Form No. 203 designated as a nonresident return; that attached to alleged

copies of the decedent's United States Income Tax Returns for 1952 and 1953 were alleged copies of Withholding Tax Form W–2 setting forth withholdings by Yonkers Trotting Association, Inc., for William H. Cane, 2600 Hudson Boulevard, Jersey City; and that the Hudson County Superintendent of Elections had certified that the decedent had been a registered voter in Jersey City since 1944 and had voted in the last general election of 1953 from 2600 Hudson Boulevard, Jersey City. On June 14, 1956 Judge Stanton, in a letter opinion, advised the parties that an order would be entered in the declaratory judgment proceeding "continuing the present restraints until trial" and that in the probate proceeding an order would be entered "allowing the Trustees of Princeton University to intervene."

On June 20, 1956 The Trustees of Princeton University obtained an order in the New York proceeding directing Virginia F. Cane to show cause on June 25, 1956 why the New York proceeding should not be stayed pending final decision in the New Jersey proceeding. On June 22, 1956 Judge Stanton signed an interlocutory injunction which restrained the executors from participating in the out-of-state probate proceeding except in response to the aforementioned order to show cause dated June 20, 1956. On the same day Judge Stanton signed an order granting Princeton's motion for intervention and reopening of the order dated April 18, 1956. On June 25, 1956 the order to show cause in the New York proceeding was heard; counsel there consented that the will be admitted to probate and that letters testamentary be issued without prejudice to the New Jersey declaratory judgment proceeding and to the question of proper jurisdiction to determine the domicile of the decedent; that Virginia F. Cane be permitted to give notice of her election under section 18 of the Decedent Estate Law of New York to take as widow against the will (it is estimated that if the decedent was domiciled in New York this election will entitle his widow to about $1,000,000 more than she is to receive under the terms of the decedent's will); that the question as to the decedent's domicile be specifically

reserved; and that the application of The Trustees of Princeton University for an order staying the New York proceeding until final decision by the Chancery Division of the Superior Court of New Jersey on the issue of domicile be adjourned without date. On June 28, 1956 Judge Stanton modified the interlocutory injunction dated June 22, 1956 so as to permit Virginia F. Cane to proceed in the Surrogate's Court of Orange County, New York, in accordance with the aforementioned consent of counsel but continued the interlocutory injunction in all other respects. The appeal now before this court is from this order of June 28, 1956.

In the eyes of the law a man can have but one domicile; he may have several residences but only one permanent home to which the legal incidents of domicile attach. See *State v. Benny*, 20 *N. J.* 238, 250 (1955); *State v. Garford Trucking, Inc.*, 4 *N. J.* 346, 353 (1950); *Kurilla v. Roth*, 132 *N. J. L.* 213, 215 (*Sup. Ct.* 1944); 1 *Beale, Conflict of Laws* 89 (1935); *Goodrich, Conflict of Laws* (*3d ed.* 1949), 47. In ascertaining his domicile we look to objective facts and intention and we single out the place where he maintained the particular residence which was truly his home; in the *Benny* case the Chief Justice aptly remarked that although mere residence parallels domicile in limited respects it generally lacks the elements of permanency, continuity and kinship with the physical, cultural, social and political attributes which inhere in a home. In the instant matter the decedent apparently maintained residences in New Jersey and New York and the question which can properly be determined only after full and fair hearing is: which was his domicile? See *In re Dorrance's Estate*, 115 *N. J. Eq.* 268, 274 (*Prerog.* 1934), affirmed *Dorrance v. Thayer-Martin*, 13 *N. J. Misc.* 168 (*Sup. Ct.* 1935), affirmed 116 *N. J. L.* 362 (*E. & A.* 1936), *certiorari* denied, 298 *U. S.* 678, 56 *S. Ct.* 949, 80 *L. Ed.* 1399 (1936). At this preliminary juncture, however, reference may properly be made to items of significance. The decedent evidently considered himself domiciled in New Jersey and, as the clear and explicit declaration in his will discloses,

he wanted his estate administered in New Jersey as the domiciliary state. And the record suggests that he did in fact maintain a residence and an office in Jersey City, had property there, voted there, filed tax returns indicating his residence there, and filed tax returns as a nonresident of New York.

The declaration of domicile in the decedent's will is by no means conclusive and presentation of the pertinent facts at final hearing may readily disclose that the decedent was actually domiciled in New York rather than in New Jersey. See *State of Texas v. State of Florida*, 306 *U. S.* 398, 425, 59 *S. Ct.* 563, 830, 83 *L. Ed.* 817, 834 (1939). But in the meantime the executors would seem to be duty-bound to exert their efforts to carry out the decedent's expressed wishes so long as they appear consistent with the facts and the controlling legal principles. See *Dickerson v. Camden Trust Co.*, 140 *N. J. Eq.* 34, 40 (*Ch.* 1947), modified, 1 *N. J.* 459 (1949); *Clapp*, 6 *New Jersey Practice, Wills and Administration*, § 493 (1950). However, The Trust Company of New Jersey and Forrest S. Smith apparently entertain the notion that since the widow has taken the position (which furthers her own individual interests) that the decedent was domiciled in New York, they have the right as executors to ignore the decedent's declaration of domicile and to assume a neutral attitude on the issue. We incline towards a different view; we believe that their responsibility to support the decedent's declaration did not end when the widow filed her verified statement that the decedent was domiciled in New York; indeed, that represented but the beginning of the mustering of the evidence from which the ultimate determination would be made as to whether the decedent's declaration or the widow's statement conformed legally with the true facts.

In any event, The Trust Company of New Jersey and Forrest S. Smith did, on April 18, 1956, file their complaint for probate in the Chancery Division of the Superior Court of New Jersey. The complaint demanded, in general terms, the admission to probate of the last will of William

H. Cane and the issuance of letters testamentary to the executors; unlike the will itself the complaint did not speak in terms of domicile but it did set forth that the decedent had a residence and real and personal property in Hudson County, New Jersey. The affidavit of Virginia F. Cane, in which she joined in the prayers of the complaint without waiver of her rights, did speak in terms of domicile, alleging that the decedent was domiciled in Goshen, New York. It seems clear to us that upon the filing of the complaint, the Chancery Division obtained full jurisdiction over the probate proceeding and that one of the essential issues before the court bore on the place of the decedent's domicile; indeed, the question of domicile was placed in the very forefront by the conflicting assertions in the will of the decedent and the affidavit of his widow. It is true, as the appellants stress, that the will could be admitted under the nonresident provisions of *N. J. S.* 3A:3–29 even if the decedent's domicile was in New York; but the Chancery Division would nevertheless be required to pass on the issue of domicile in order to determine whether it would proceed under that statutory provision or (in accordance with the decedent's wishes) as the domiciliary court under the resident provisions of *N. J. S.* 3A:3–18. In the light of the foregoing it is evident that the exercise of general jurisdiction over the subject matter by the Chancery Division was prior in time. The question remains as to whether it properly invoked its equitable power in restraining the parties from proceeding on the issue of domicile in the later New York action. See *Bigelow v. Old Dominion Copper, etc., Co.,* 74 *N. J. Eq.* 457, 474 (*Ch.* 1908); *Prudential Ins. Co. of America v. Merritt-Chapman & Scott Corp.,* 112 *N. J. Eq.* 179, 184 (*Ch.* 1933). *Cf. O'Loughlin v. O'Loughlin,* 6 *N. J.* 170, 179 (1951); *Hammer v. Hammer,* 36 *N. J. Super.* 265, 271 (*App. Div.* 1955); *New Jersey Zinc Co. v. Franklin Iron Co.,* 29 *N. J. Eq.* 422, 430 (*Ch.* 1878); *Home Insurance Co. v. Howell,* 24 *N. J. Eq.* 238, 241 (*Ch.* 1873); *Annotation, "Injunction by state court against*

*action in court of another state,"* 6 *A. L. R.* 2d 896, 943 (1949).

. ▮ It is now acknowledged that the Superior Court has equitable power to restrain parties before it from participating in a judicial proceeding in another state. *O'Loughlin v. O'Loughlin, supra,* 6 *N. J.,* at *page* 178. Though the power is a delicate one it will be conscientiously exercised whenever the true interests of justice so require. *O'Loughlin v. O'Loughlin, supra,* 6 *N. J.,* at *page* 179. It may be invoked to avoid the vexation and oppression incident to multiple litigation in different jurisdictions. *Cf. Prudential Ins. Co. of America v. Merritt-Chapman & Scott Corp., supra; Von Bernuth v. Von Bernuth,* 76 *N. J. Eq.* 177, 182 (*Ch.* 1909). And it may be asserted to preserve the court's prior jurisdiction over a particular controversy and avoid the spectacle of an unseemingly race resulting perhaps in conflicting judicial determinations. See *New Jersey Zinc Co. v. Franklin Iron Co.., supra,* 29 *N. J. Eq.,* at *page* 430; *Bigelow v. Old Dominion Copper, etc., Co., supra,* 74 *N. J. Eq.,* at *page* 474. In the *Bigelow* case Chancellor Pitney had this to say:

"And besides, there is the general rule, essential to the orderly administration of justice, that, as between courts otherwise equally entitled to entertain jurisdiction, that court which first obtains possession of the controversy ought to be allowed to proceed and dispose of it without interference; a rule established, of course, primarily for the benefit of the suitor, rather than for the protection of the dignity of the court. It was applied by Chancellor Runyon in *Home Insurance Co. v. Howell,* 24 *N. J. Eq.* 238, 241 (9 *C. E. Green*) 238, 241, where suit having first been commenced in this court for relief against certain policies of insurance alleged to have been fraudulently obtained from the complainant upon defendant's property in Illinois, and defendant having afterwards begun suit upon the policies in a court of that state, which suit had been removed to the federal court, the learned Chancellor allowed an injunction against the prosecution of this action, notwithstanding the insurance company might have had complete relief in the federal court, either at law or by recourse to its equity side. In his opinion he quoted with approval the remark of Grier, J., in *Peck v. Jenness,* 7 *How.* (*U. S.*) [612], 625, 12 *L. Ed.* 841, to the effect that the rule giving exclusive jurisdiction to the court which first obtains possession of the controversy has its foundation not merely in comity,

but in necessity: 'For if one may enjoin, the other may retort by injunction, and thus the parties be without remedy; being liable to a process for contempt in one, if they dare to proceed in the other' —a remark reiterated by the Supreme Court of the United States in *Central National Bank of Boston v. Stevens*, 169 *U. S.* [432], 459, 18 *S. Ct.* 403, 42 *L. Ed.* 807."

In the light of the prevailing circumstances, we are satisfied that the Chancery Division did not exceed its discretionary powers in issuing its preliminary injunction. The execution of the will in New Jersey where the decedent apparently had a residence, an office and property, the designation of a New Jersey trust company and a New Jersey attorney as two of the three executors and trustees, and the decedent's unequivocal declaration of a New Jersey domicile in his will, made New Jersey the natural and perhaps the necessary choice of the executors and trustees for the institution of the primary proceeding. The ensuing New Jersey probate action was the first in time and, though the widow indicated when she joined it that she was asserting the decedent's domicile to have been in New York and that she intended to press her claim there against the will rather than in accordance with its terms, she could not control or limit the effect of the Chancery Division's acquisition of general probate jurisdiction. It seems clear that thereafter the interests of the estate as well as the interests of sound judicial administration would be notably disserved by the parties' active prosecution of simultaneous proceedings in New Jersey and New York for the original determination of domicile. Although there is no reason whatever to doubt that the courts of both of the neighboring states would afford full and fair hearings and equally just and proper determinations on the totality of the evidence presented, the patent disadvantages of such concurrent litigation dictate its avoidance by courts wherever feasible. See *Korff v. G and G Corp.*, 21 *N. J.* 558 (1956). In the instant matter the preliminary restraint was expeditiously issued by the New Jersey court having prior jurisdiction and was deferentially acknowledged by appropriate reserva-

tion and adjournment in the New York court. See *Hutton's Executors v. Hutton,* 40 *N. J. Eq.* 461, 465 (*Ch.* 1885):

"The question involved is not a contest between different tribunals for the mastery, but one of principle. The surrogate of the county of New York has justly recognized this fact in the deference paid the court by awaiting the result of the inquiry here."

*Cf. Levy v. Pacific Eastern Corporation,* 154 *Misc.* 655, 277 *N. Y. S.* 659 (*Sup. Ct.* 1935); *Simmons v. Superior Court,* 96 *Cal. App. 2d* 119, 214 *P. 2d* 844, 19 *A. L. R. 2d* 288 (1950); *Annotation, "Stay of civil proceedings pending determination of action in another state or country,"* 19 *A. L. R. 2d* 301 (1951).

The appellants contend that the evidence supporting the application for the preliminary injunction was inadequate "under *R. R.* 4:44–4" and that there was no showing of "urgent necessity" for the preliminary injunction within the principles expressed in *Citizens Coach Co. v. Camden Horse R. Co.,* 29 *N. J. Eq.* 299 (*E. & A.* 1878). See *General Electric Co. v. Gem Vacuum Stores,* 36 *N. J. Super.* 234, 236 (*App. Div.* 1955); *Harrison v. Floyd,* 26 *N. J. Super.* 333, 347 (*Ch. Div.* 1953). *Cf. Naylor v. Harkins,* 11 *N. J.* 435, 446 (1953); *Christiansen v. Local 680 of Milk Drivers, etc.,* 127 *N. J. Eq.* 215, 219 (*E. & A.* 1940). The attack on the adequacy of the evidence supporting the injunction is wholly without merit; indeed the undisputed facts were more than enough at the preliminary stage of the proceeding to warrant the relief which was granted. The declaration of domicile in the will, coupled with the decedent's residence and associations in New Jersey, furnished a *prima facie* basis for the Chancery Division's exercise of its prior jurisdiction; it must be borne in mind that the Chancery Division was not called upon to make an ultimate finding of domicile, for that is the issue which must await final hearing. Furthermore, there was an adequate showing of urgent necessity, for without the preliminary injunction there would be the continuing and ever present danger of the parties going forward on the issue of domicile in the

New York proceeding; that is the very thing which the Chancery Division could equitably seek to prevent upon the application of Princeton or other interested parties. *Cf. Naylor v. Harkins, supra; Christiansen v. Local 680 of the Milk Drivers, etc., supra.*

█ The final contention advanced by the appellant Virginia F. Cane is that "she has never been served as an individual with process in this State." Our finding is to the contrary. A power of attorney was signed by her as an individual and set forth that she did appoint the Clerk of the Superior Court of New Jersey as the person upon whom may be served "all process affecting the estate of William H. Cane, deceased, or any interest therein" whereof she is an executor. The metaphysical distinction between Virginia F. Cane individually, and Virginia F. Cane as executrix, is troublesome enough (*cf. Farone v. Habel,* 22 *N. J.* 66 (1956)) without seeking to import it into the clear document in which Virginia F. Cane provided for the manner of service upon her of all process affecting the estate or her interest therein; there can hardly be any question that the interlocutory injunction comes well within the described class of process. The opinion in *Acker v. Skrotsky,* 9 *N. J. Super.* 65 (*App. Div.* 1950), which is relied upon by the appellant Virginia F. Cane, did not discuss the scope of a power of attorney filed in accordance with *N. J. S.* 3A:12–14; and in the later opinion in *Acker v. Skrotsky,* 17 *N. J. Super.* 27 (*App. Div.* 1951) the court assumed* that no process had there been served. In the instant matter process was actually served in this State upon Virginia F. Cane in strict compliance with the power of attorney and she is properly before the Chancery Division on all matters affecting the estate and her interest therein.

Affirmed.

*For affirmance*—Chief Justice VANDERBILT, and Justices HEHER, WACHENFELD, BURLING and JACOBS—5.

*For reversal*—None.