**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0454-16T1

LARISSA TROFIMOVA,

    Plaintiff-Respondent,

v.

IGOR TROFIMOV,

    Defendant-Appellant.

Submitted March 7, 2018 – Decided July 12, 2018

Before Judges Alvarez and Nugent.

On appeal from Superior Court of New Jersey,
Chancery Division, Family Part, Morris County,
Docket No. FM-14-1538-14.

Ianoldi & Edens, LLC, attorneys for appellant
(Ann M. Edens, of counsel and on the brief;
Daniel R. Kraft, on the briefs).

Ceconi & Cheifetz, LLC, attorneys for
respondent (Kimberly A. Rennie, of counsel;
Lindsay A. Heller, on the brief).

PER CURIAM

    Defendant Igor Trofimov and plaintiff Larissa Trofimova were

divorced on September 19, 2016, by way of a final dual judgment.

Defendant appeals virtually every financial aspect of the order.

After our review of the record, the arguments on appeal, and the relevant precedents, we affirm in part, reverse and vacate in part, and remand.

The parties married on October 24, 1981, and have one emancipated child. Plaintiff has a Master's Degree in Mathematics and Computer Science and is fully employed. However, the trial judge found she deferred the development of her own career when the couple relocated to advance defendant's career, first from Russia to Germany, and then to the United States. Defendant is, by his own account, a renowned scientist who "has advanced the science in his field."

In 2012, the same year the parties separated, they entered into a separation agreement. Plaintiff filed a motion to enforce, which resulted in the court issuing two pendente lite orders on January 30, 2015. These orders enforced the separation agreement in which defendant assumed certain expenses, such as the cost of maintaining the marital home until sale. Defendant was ordered to pay outstanding payments to plaintiff of his health and car insurance.

In March 2015, the parties participated in a mediation session, during which defendant paid $10,000 towards arrears and reimbursements on the January 30, 2015 order. Thereafter, on July 1, 2015, the parties entered into a consent order for pendente

lite support totaling $1832 per month, payable through probation. Defendant agreed to produce outstanding discovery to forensic accountants, who had been retained to provide expert reports for both parties, and provide a personal property list. Defendant did neither.

During the marriage, the parties acquired interests in various companies, pension and retirement plans, and other assets. Plaintiff has a 401(k) through her employer with a balance in excess of $212,000 and a separate IRA. Defendant only acknowledged one IRA, despite listing two on his February 2011 Case Information Statement (CIS). Defendant was not specific as to the amount in the one IRA he acknowledged.

Defendant's share in a company he created with four friends, known as Akela Laser Corporation (Akela), was one of the assets subject to equitable distribution. Defendant is the Chief Technology Officer and owns a 28.57% ownership interest in the company; it is his main source of income. Plaintiff also initially held an interest in the company, but sold her shares for $6000 and deposited the proceeds into the parties' joint checking account. At trial, the court-appointed expert testified the fair market value of defendant's interest in Akela was $214,000.

Plaintiff owns Princeton Technology Advisers Company (PTAC). At trial, defendant testified plaintiff could retain PTAC

entirely. The court-appointed expert assessed PTAC's value at $133,000.

In his August 31, 2016 post-trial findings of fact, the trial judge concluded plaintiff was credible and defendant was not. He found defendant incredible based on his demeanor and responses while testifying, and his lack of compliance with prior court orders. The judge described defendant as "cagey rather than forthcoming," and cited as an example defendant's reluctance to even disclose where he was living—New Jersey or California. Additionally, defendant "stonewalled the production of documents for examination by the accounting experts."

As the judge observed, defendant claimed he signed the separation agreement, "only under duress and without reading it." The judge disbelieved this, given defendant's level of education, and the fact he was "used to reviewing contracts and grants."

Defendant raises the following points on appeal:

> POINT ONE
> THE LOWER COURT ERRED WHEN IT FAILED TO REFERENCE, ANALYZE OR CONSIDER N.J.S.A. 2A:34-23.1 FACTORS IN SUPPORT OF ITS AWARD OF EQUITABLE DISTRIBUTION FOR THE BUSINESSES, RETIREMENT ASSETS AND BANK ACCOUNTS (Absent from Dal-Da20).[1]
>
> A. MARITAL BUSINESSES

---

[1] Defendant failed to cite specific parts of the record in his point headings, as required by Rule 2:6-2(a)(6). Instead, defendant repeatedly notes "Absent from Dal-Da20."

B.    MARITAL   FINANCIAL   BANK   ACCOUNTS

C.    RETIREMENT ACCOUNTS ACQUIRED DURING
THE MARRIAGE

POINT TWO
THE LOWER COURT ERRED WHEN IT FAILED TO STATE
FINDINGS  OF  FACT  AND  CONCLUSIONS  OF  LAW
THROUGHOUT THE FINAL DUAL JUDGMENT OF DIVORCE
(Absent from Dal-Da20).

A.    THE   COURT   ERRED   WHEN   IT   ORDERED
ESCROW  OF  PROCEEDS  FROM  THE  SALE  OF  THE
PARTIES' FORMER MARITAL HOME

B.    THE   COURT   ERRED   WHEN   IT   ORDERED
PTAC,   AN   ASSET   FORMED   DURING   THE
MARRIAGE,   EXEMP[T]   FROM   EQUITABLE
DISTRIBUTION

C.    THE LOWER COURT ERRED WHEN IT DENIED
CREDIT  OF  MONIES  [PLAINTIFF]  SQUANDERED
POST-SEPARATION

D.    THE LOWER COURT ERRED WHEN IT DENIED
CREDIT   OF   MONIES   [DEFENDANT]   PAID
PENDENTE LITE

POINT THREE
THE LOWER COURT ERRED WHEN IT FAILED TO STATE
FINDINGS OF FACT, CONCLUSIONS OF LAW AND THE
ISSUES ABSENT FROM THE RECORD OR ADDRESSED IN
THE COURT'S OPINION LETTER  (Absent from Dal-
Da20).

A.    THE   LOWER   COURT   ERRED   WHEN   IT
ORDERED  [DEFENDANT]  TO  MAINTAIN  A  LIFE
INSURANCE   POLICY   FOR   SIX   (6)   YEARS

B.    THE   LOWER   COURT   ERRED   WHEN   IT
ORDERED [DEFENDANT] TO PAY HIS SHARE OF
EQUITABLE  DISTRIBUTION  BY  WAY  OF  THE
PROBATION  DEPARTMENT  OF  THE  FAMILY
DIVISION

C. THE LOWER COURT ERRED WHEN IT ORDERED [DEFENDANT] TO PAY 4% INTEREST RATE ON THE OUTSTANDING MONIES OWED ON THE EQUITABLE DISTRIBUTION AWARD

D. THE LOWER COURT ERRED WHEN IT ORDERED [DEFENDANT] TO RELEASE LITIGATION DOCUMENTATION POST-DIVORCE

POINT FOUR
THE LOWER COURT ERRED WHEN IT FAILED TO REFERENCE, ANALYZE OR CONSIDER NEW JERSEY FACTORS IN SUPPORT OF ITS COUNSEL FEE AWARD (Absent from Dal-Da20).

I.

Appellate review of a trial court's decision is limited, as "findings by the trial court are binding on appeal when supported by adequate, substantial, credible evidence." Cesare v. Cesare, 154 N.J. 394, 411-12 (1998) (citing Rova Farms Resort, Inc. v. Inv'rs Ins. Co., 65 N.J. 474, 484 (1974)). "[M]atrimonial courts possess special expertise in the field of domestic relations. . . . Because of the family courts' special jurisdiction and expertise in family matters, appellate courts should accord deference to family court factfinding." Id. at 412-13.

"Only when the trial court's conclusions are so 'clearly mistaken' or 'wide of the mark' should an appellate court intervene and make its own findings to ensure that there is not a denial of justice." N.J. Div. of Youth & Family Servs. v. E.P., 196 N.J. 88, 104 (2008) (citing N.J. Div. of Youth & Family Servs. v. G.L.,

6

191 N.J. 596, 605 (2007)). Deference is extended to the family court's factual findings because of its ability to make first-hand credibility judgments. <u>Ibid.</u> "However, a judge's legal conclusions are subject to our plenary review." <u>Milne v. Goldenberg</u>, 428 N.J. Super. 184, 197-98 (App. Div. 2012) (citations omitted).

The trial court has the discretion to allocate marital assets to the parties in matters of equitable distribution. <u>La Sala v. La Sala</u>, 335 N.J. Super. 1, 6 (App. Div. 2000) (citing <u>Borodinsky v. Borodinsky</u>, 162 N.J. Super. 437, 443-44 (App. Div. 1978); <u>Jacobitti v. Jacobitti</u>, 263 N.J. Super. 608, 613 (App. Div. 1993). On appeal, these decisions are reviewed, "to determine whether the court has abused its discretion." <u>La Sala</u>, 335 N.J. Super. at 6. "An abuse of discretion 'arises when a decision is "made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis."'" <u>Milne</u>, 428 N.J. Super. at 197 (quoting <u>Flagg v. Essex Cty. Prosecutor</u>, 171 N.J. 561, 571 (2002) (quoting <u>Achacoso-Sanchez v. Immigration & Naturalization Serv.</u>, 779 F.2d 1260, 1265 (7th Cir. 1985)).

We affirm equitable distribution awards "as long as the trial court could reasonably have reached its result from the evidence presented, and the award is not distorted by legal or factual mistake." <u>La Sala</u>, 335 N.J. Super. at 6 (citing <u>Perkins v.</u>

Perkins, 159 N.J. Super. 243, 247-48 (App. Div. 1978)). The award will be affirmed even if we would not have made the same ruling as the trial court. Perkins, 159 N.J. Super. at 247-48. "Reversal is warranted only when a trial court's findings reflect a mistake must have been made because the factual findings are 'so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice.'" Clark v. Clark, 429 N.J. Super. 61, 70 (App. Div. 2012) (quoting Rova Farms Resort, Inc., 65 N.J. at 484 (quotation omitted)).

N.J.S.A. 2A:34-23.1 specifies the factors that a court should consider when determining equitable distribution of marital assets. These include the duration of the marriage, the contribution each party made to the acquisition of assets, the standard of living, and the economic circumstances of each party at the time of the division of property. N.J.S.A. 2A:34-23.1(a), (c), (d), and (f). The statute requires judges to make findings of fact on the evidence relevant to the issues being decided. N.J.S.A. 2A:34-23.1 We do not agree the judge did not make adequate factual findings; he made such findings as to each asset.

The court must first identify the property eligible for distribution, determine the value of those assets, and then decide the manner in which equitable allocation should be made. Rothman

v. Rothman, 65 N.J. 219, 232 (1974). Each case must be examined on its own merits and facts.

## II.

Defendant first challenges the trial court's equitable distribution of the parties' businesses, retirement assets, and bank accounts. The judge gave great weight to the thirty-three year length of the marriage. He acknowledged the parties' moves from Russia to Germany, and then to the United States——made to advance defendant's career——delayed the development of plaintiff's career. The judge's reliance on these factors is based on well-established precedent and demonstrates one example of the explicit fact-finding in which he engaged.

In rendering his valuation of the parties' interest in their respective companies, the judge relied upon the opinion of a court-appointed accounting expert. With regard to PTAC, the judge found plaintiff was the sole owner of that $133,000 asset. The judge fixed plaintiff's share of Akela at forty percent of defendant's equity, or $85,600. We find no basis to disturb the judge's decisions with regard to these assets. In making such decisions, judges may rely on expert opinions at their discretion. See Carey v. Lovett, 132 N.J. 44, 64 (1993) (applying that principle to malpractice cases); see also Brown v. Brown, 348 N.J. Super. 466,

478 (App. Div. 2002) (applying that principle to expert testimony on valuation issues).

Review of equitable distribution is subject to abuse of discretion, and none has been demonstrated here. The judge's decisions are not "inexplicably departed from established policies, or rest[ing] on an impermissible basis." Milne, 428 N.J. Super. at 197 (quoting Flagg, 171 N.J. at 571 (quotation omitted)). The challenge to the equitable distribution of the marital estate lacks merit.

Defendant also asserts he should have received a share of PTAC. In his trial testimony, however, defendant acknowledged plaintiff owned the company and said "[t]hat's her company, whatever she wants to do with it." Defendant had stopped working for the company years prior and did "not have time to work there." Defendant denied having an interest in PTAC when asked directly by the court. When asked if he wanted to be compensated through equitable distribution for his share, defendant responded "whatever they assessed the value, that's hers." Under these circumstances—where defendant explicitly abdicated any interest in PTAC—allocation of ownership solely to plaintiff was not an abuse of discretion.

A-0454-16T1

III.

Defendant contends the judge erred when he ordered defendant's share of the proceeds from the sale of the marital home be held in escrow pending his satisfaction of equitable distribution and counsel fee obligations. It is obvious the judge did so based on defendant's unjustified failure to comply with prior orders and to respond fully and truthfully in the discovery process and trial of the matter. Since defendant had seemingly relocated to another state or intended to do so, the creation of a fund with which to make equitable distribution payments seems an exercise in ordinary prudence. It was not an abuse of discretion. Again, defendant refused to identify even his current state of residence or disclose plans to relocate. Perhaps if defendant had not repeatedly avoided giving such basic information, these measures would not have been necessary.

IV.

Defendant wanted to be credited $50,000 for funds plaintiff removed from the parties' joint bank account post-separation, and reimbursement for all pendente lite payments made to plaintiff pursuant to Mallamo v. Mallamo, 280 N.J. Super. 8 (App. Div. 1995). In this regard, the judge stated:

> There is no question that [plaintiff] used joint funds to maintain the household after [defendant] left in October 2012. She

> submitted a spreadsheet setting forth her disposition of the money from the joint account for joint housing expenses. It also appears that [defendant] used money from the joint account for his own personal expenses. While [defendant] should receive some credit for [plaintiff]'s use of funds from the joint account, . . . any credit is washed away by his failure to pay joint expenses or payments pursuant to the Separation Agreement and Court Order.

Based on these findings, the judge properly denied defendant's request for reimbursement of the pendente lite support payments made.

The court allocated the proceeds from the sale of the home equally, which supports the pendente lite award requiring defendant to pay half of the Schedule A "shelter" expenses. Importantly, the court based the pendente lite order on the parties' own separation agreement, where defendant explicitly agreed to pay half of the expenses for the house. Defendant acknowledges this agreement, but claims since plaintiff was not awarded alimony, and the contract is silent as to a refund, he is entitled to reimbursement under <u>Mallamo</u>.

It is true "pendente lite support orders are subject to modification prior to entry of final judgment and at the time of entry of final judgment." <u>Mallamo</u>, 280 N.J. Super. at 12 (citations omitted). However, the fact that the court did not ultimately award alimony does not alone require a refund of

pendente lite support paid. The pendente lite payments in this case were not alimony. The payments represented only fifty percent of plaintiff's Schedule A "shelter" expenses for the former marital residence which defendant agreed to pay in the separation agreement.

## V.

Defendant makes a number of related arguments challenging the mechanisms chosen by the trial judge to enforce equitable distribution. The court's order that equitable distribution payments be made through the probation department was mistaken. The probation department has authority over matters involving only "alimony, maintenance or child support." See R. 5:4-7.

We are uncertain as to the manner in which the language requiring defendant to maintain life insurance equivalent to the unpaid balance of equitable distribution was included in the final judgment of divorce. It is possible plaintiff's attorney added that clause without any objection being made by defendant's counsel. The judge then signed the final judgment as submitted without comment. We are unable to find any indication in the record that the provision was required by the judge, as opposed to simply being an add-on by counsel to guarantee payment. We leave resolution of that question to counsel.

If the court did in fact order the maintenance of life insurance in order to ensure payment, the language can remain. See generally Claffey v. Claffey, 360 N.J. Super. 240 (App. Div. 2003). If the paragraph was included solely at plaintiff's counsel's initiative, albeit without objection by opposing counsel, it must be deleted from the final judgment and defendant is thus relieved of that obligation.

The court ordered interest imposed on an annual basis if defendant decided to pay the minimum of $1800 a month by way of equitable distribution, as opposed to a lump sum satisfaction of the decree. The court did not abuse its discretion in doing so. The judge's comments regarding defendant's evasiveness, lack of cooperation with the discovery process, and lack of credibility adequately inform his decision to impose interest. See Heinl v. Heinl, 287 N.J. Super. 337, 347 (App. Div. 1996) (requiring specified, articulate findings of fact and conclusions of law in court's decision, not naked conclusions).

## VI.

Defendant challenges the judge's order that he provide plaintiff with the financial information and documentation regarding PTAC for the 2016 tax year so she can file her 2016 income tax return. At that time, only defendant was employed by the company and had access to the company's records.

14

Defendant's delay in supplying the necessary documents meant plaintiff was unable to file her return. The nature of the documentation is clearly spelled out. This argument requires no further discussion in a written opinion.

## VII.

Defendant objects to the court's imposition of a counsel fee obligation. The judge made a forty percent across-the-board award, resulting in a $31,488.10 obligation. Although the judge did not specify the factors he considered pursuant to Rule 5:3-5(c), the discussion throughout the opinion made clear he had those very factors in mind. The court's obligation is to consider the factors, not mechanically reiterate them. R. 5:3-5(c).

The judge did find the requested fees to be "fair and reasonable," and that much work was required due to the "recalcitrance of [defendant]." Plaintiff faced substantial difficulties in attempting to enforce the separation agreement, enforce subsequent court orders, and prepare for the final hearing. A forty percent award was therefore appropriate.

An award of counsel fees rests in the discretion of the court. Williams v. Williams, 59 N.J. 229, 233 (1971). The court must consider the factors established under N.J.S.A. 2A:34-23, Rule 5:3-5(c), Rule 4:42-9, and RPC 1.5(a). We find that the judge's decision was adequately informed by those factors.

15

Affirmed in part, but reversed as to the requirement that equitable distribution payments be made through the probation department. The life insurance question must be resolved by counsel, and if no agreement is reached on the point, it should be submitted to the trial judge for disposition.

Affirmed in part, reversed and vacated in part, and remanded.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0454-16T1